### John H. Hood and E. A. Rice v. Paddock-Hawley Iron Company.

1. SURETY AND GUARANTY—*Right to Declare Conditions.*—A party offering to become a surety or guarantor, has the right to dictate the conditions and form of the proposed liability, and is bound only by an acceptance of the offer as made and strictly according to its terms.

2. CONTRACTS OF SURETY—*Conditions Precedent.*—H. & R., in consideration that the P. H. I. Co. would sell and deliver certain goods to the McC. Mfg. Co., agreed to accept a draft at ninety days, for the payment of the price. *It was held* that the contract was one of surety only and not within the statute of frauds, and that before an action would lie upon it a draft should be tendered to H. & R. for their acceptance.

Memorandum.—Assumpsit. Appeal from the County Court of Montgomery County; the Hon. G. R. COOPER, County Judge, presiding. Heard in this court at the November term, 1893, and reversed and remanded. Opinion filed February 15, 1894.

The opinion states the case.

ZINK & KINDER, attorneys for appellants.

AMOS MILLER and R. McWILLIAMS, attorneys for appellee

MR. JUSTICE PLEASANTS DELIVERED THE OPINION OF THE
COURT.

This was an action of assumpsit commenced by appellee
August 31, 1893. The declaration contained two counts.
By the first it was averred that on January 5, 1893, the
McCaslin Manufacturing Company, of Litchfield, Ill., made
its order on plaintiff for certain goods, and the defendants,
in consideration that plaintiff would sell and deliver them
to said company, would guarantee the payment of their
price, and promised plaintiff to pay it if said company should
not; that confiding in said promise, plaintiff did sell, ship
and deliver to said company the said goods, amounting to
$231.45, which amount was due the plaintiff in ninety days
from the date aforesaid, and that although the day of pay-
ment has elapsed, the said company did not nor would, on
that day or at any other time, pay the same or any part
thereof to the plaintiff, but refused so to do, whereof the
defendants on the day last aforesaid had notice.

The second is like the first, except that it alleges the de-
fendants, by their promise in writing, agreed to guarantee
the payment, and that plaintiff sold the goods on January
11th, and the sum stated was due ninety days from that date.

With the declaration, filed as a copy of the instrument
sued on, was the following:

"LITCHFIELD, ILL., Jan. 11, 1893.
Paddock-Hawley Iron Co., St. Louis, Mo.

GENTLEMEN: Your draft payable February 26, 1893, pre-
sented to us this day for acceptance.

We agreed to indorse the McCaslin Co.'s paper due in
90 days; therefore decline acceptance for shorter time. We
are willing to guarantee your original bill and subsequent
orders to date on terms of 90 days from this date.

If satisfactory, send draft with all bills to date included
and it will be accepted by secretary and indorsed by us.

Very respectfully,

JOHN H. HOOD,
E. A. RICE."

A jury was waived and the cause tried by the court upon the general issue, though the statute of frauds was also pleaded. Having found for the plaintiff and overruled motions for a new trial and in arrest, judgment was rendered against the defendants for $231.45, the amount claimed and costs.

The McCaslin Company, whose business seems to have been the manufacture of carts, was organized and incorporated in November, 1892, presumably with a small working capital. Appellant Rice was its president and Hood its secretary.

It became indebted to appellee for four bills of goods, shipped to its orders, respectively on November 15th and 22d, and December 23d and 28th, aggregating $132.48. A few days later it ordered another bill, which appellee returned declining to fill. Thereupon appellant Hood wrote to appellee the following, on January 4th:

" GENTLEMEN : Find herewith order of McCaslin Company which please fill and forward at earliest convenience. Mr. E. A. Rice, of Rice-Howell Lumber Company, and John H. Hood, President of the Central Investment Company, will personally indorse acceptance for same, due in ninety days from shipment."

On the 5th, appellee wrote to appellants acknowledging the receipt of the order and the foregoing letter of Hood, noting the promise therein, and adding:   " But you do not answer our letter in regard to goods shipped in November and December amounting to $132.48.   We must ask you to advise us by return mail that you will also see this paid. We will hold the present order until we receive a reply;" which Mr. Hood returned the next day with the following under-written :

" Jan. 6, 1893.   You may include above in our 90 days acceptance."

On the 7th, appellee wrote to appellants acknowledging the return of its former letter, quoting the " notation " thereunder written, and saying :   " The order received the other day will go forward as promptly as possible, and we

this day make draft on the McCaslin Mfg. Co., for $132.48, payable February 26th, which you will please have accepted by the treasurer of the company, and indorsed on the back by yourselves according to terms." Then follows a statement of the dates and amounts of the November and December shipments as herein above given, concluding: " Average due February 26th."

The draft therein referred to is the one presented to appellants for their indorsement on January 11th and in their letter of that date, a copy of which was filed with the declaration as of the instrument sued on.

It was clearly not in accordance with any offer they had made. That of January 4th was to indorse an acceptance of the company due in ninety days from shipment of the accompanying order, which could not be earlier than the 4th of April; and that of the 6th (by the "notation") was to have included in that offer the November and December shipments. It was not only drawn at an average of ninety days on earlier shipments, but preceded in date that of the shipment on the January order. There is nothing in the correspondence or elsewhere in the record to warrant the assumption that appellants contemplated the indorsement of two drafts maturing at different times—one at a time, so much less than ninety days from the date of the offer.

Replying to their letter of the 11th, declining to indorse the acceptance, appellee on the 12th wrote, in explanation, that the time was an average of ninety days, and saying: " When we grant ninety days time, of course we are entitled to acceptance at ninety days from that date, or if several dates, ninety days from the average dates," and hoping they would agree to indorse the paper.

If that is the proper construction, as between vendor and vendee, of a general agreement for a credit of ninety days, its practical operation would be materially varied, as the earlier and later sales should vary in amount. But here it overlooks the position appellants offered to take as sureties, and the express terms of the offer.

Hood v. Paddock-Hawley Iron Co.

For reasons stated in their answer of the 13th, they still refused to indorse it, and closed as follows : " If our acceptance for ninety days is not satisfactory, let us know at once that we may place our order elsewhere."

On the 14th, appellee replied : " We are just in receipt of your esteemed favor of the 13th inst., and contents noted. As requested, we this day make draft on you in accordance with your wishes, namely, ninety days from January 11th for $132.48. We enclose this draft direct to you so that you can have it accepted by an officer of the company, and then indorsed by yourselves, individually, and returned to us by prompt mail. * * * The order taken by our Mr. Gary on the 9th inst., will go forward to-day."

That draft was accepted, indorsed, and by appellant Rice, paid at maturity, which satisfied the claim for the November and December shipments.

But no draft at ninety days for the amount of any January or subsequent shipment was ever presented to appellants for their indorsement. Nor did appellee intend to receive acceptances, with or without indorsement for such shipments. Its next letter appearing in the record, which is of March 21st, addressed, not to appellants, but to the McCaslin Company and shows a clear departure, is as follows :

" DEAR SIRS : We have before us your esteemed favor of March 20th in regard to our draft of $163.95, to cover January account. This was not included in the acceptance we hold for $132.48, which was drawn to cover November and December accounts. We did not suppose that you supposed we would take acceptance for all goods you bought. Our idea for taking acceptance for November and December account was to let you have goods so you could get work for market. So our draft for $163.95 should be paid."

Appellee, so far as appears, had no correspondence with appellants after January 14th. Its letter of April 5th to the company, shows that its draft for $163.95 was a sight draft, that it was returned by the bank to the drawer unpaid, and declared its purpose, unless it received satisfactory explanation by return mail, to place the account in other hands for collection.

The verified account filed with the declaration shows items under four dates aggregating respectively as follows:

| | | |
|---|---:|---:|
| January 10th | $70.66 | |
| January 14th | 26.39 | |
| January 25th | 66.90 | $163.95 |
| February 15th | 67.50 | |

$231.45

The sight draft covered the three shipments in January, and the one in February made up the amount of the claim and judgment.

For neither of these shipments was any ninety day draft drawn, nor any acceptance or indorsement of such draft asked, nor any credit given of ninety days, or any other time. There is no evidence that appellants individually assumed or offered to assume any obligation in respect to either of them except as shown by the correspondence quoted. From that it is clear that they offered or promised to assume it only as to the November and December account, and the order accompanying their letter of January 4th, and only in the form of an indorsement of the McCaslin Company's acceptance at ninety days from date of shipment of that order.

We find in the record no evidence tending to show that they ever refused to comply with that offer or promise.

It is unnecessary to make an argument or cite authority to show that a party offering to become a surety or guarantor has the right to dictate the conditions and form of the proposed liability, and is bound only by an acceptance of the offer as made and strictly according to its terms. That so is the law is not denied, but the position of counsel, if we understand it, is that, like the statute of frauds, it has no application to this case, for the alleged reason that the goods in question were ordered by and sold to appellants on their credit, and therefore they are originally liable. Their argument opens as follows: "This suit was brought to recover bill of goods sold by appellee to appellants. The declaration has two counts. The first one in effect avers for goods

sold and delivered by appellee to appellants. The undertaking of appellants was that if appellee would sell the goods to McCaslin Manufacturing Company, they (appellants) would pay for them. This agreement is an original undertaking and not collateral, and therefore could not be affected by the statute of frauds; nor is the rule of law relating to the liability of grantors applicable, for the reason that the undertaking is an original one, the goods having been sold upon direct request of appellants. The evidence supports this view. The second count is to the same effect, charging that the undertaking was in writing." And such is the case as claimed throughout.

If either of these statements, except that " the declaration has two counts," and that the goods were " sold at the direct request of appellants," is correct, we have entirely misunderstood the record. From that it seems entirely clear to us that the suit was not brought for goods sold by appellee to appellants. Each of the two counts is special; neither is for goods sold. The first does not in effect so aver. The undertaking of appellants was not that if appellee would sell them to the McCaslin Company, they (appellants) would pay for them. The evidence does not support this view. The second count is not to the same effect.

The suit was brought to recover damages for the alleged breach by appellants, of a promise to guarantee the payment by the McCaslin Company, of the price of certain goods sold by appellee to that company, and to pay the same if it should not. The first count distinctly avers that the goods were sold and delivered to that company, and that the undertaking of appellants was, that in consideration of such sale they would guarantee the payment of the price, to be due in ninety days, and would pay it if the vendee did not. And the second is also to that effect, charging that the undertaking was in writing. Each avers that the vendee did not pay it in ninety days or at any other time, whereof appellants had notice, and so became liable. Under neither of these counts could evidence of a sale to appellants have been properly received. It is not charged that they were liable upon any promise, express or implied, as vendees, but dis-

tinctly and only as sureties or guarantors. The evidence supports no other view, and being wholly in writing, from ambiguity, there is no room for construction or uncertainty as to what their undertaking or offer was. The difference between original and collateral undertakings is inapplicable.

The statute of frauds is not relied on. Here it was in writing, and is clearly one of the suretyship only. Whether made after the sale or before, and in consideration of it, the conditions of liability must be shown to have been strictly performed by the promisee, or such performance waived or prevented by the promisors. Those conditions were that the goods were to be sold to the McCaslin Company, and that the vendor was to receive in payment therefor the acceptance of its draft by the vendee at ninety days from the date of their shipment, indorsed by appellants. The last was as material as the first. Appellee, the vendor, did not perform, nor offer to perform it, nor was its performance waived or prevented by appellants. It made no such draft. Before the expiration of ninety days from the date of the first shipment, it drew its sight draft on the vendees, insisted on its immediate payment, and threatened suit if it should not be made. It never presented any other. The promise of appellants was to guarantee the payment only, by their indorsement of such ninety day draft, and as none such was ever tendered to them for indorsement, no liability on their part arose. We think the County Court mistook the law governing the case, and its finding was wholly unsupported by the evidence. Its judgment will therefore be reversed and the cause remanded. Reversed and remanded.